20-143

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ST. GEORGE HOTEL ASSOCIATES, LLC and HENRY CLARK ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>Defendant. | Docket No.:<br><br>**COMPLAINT WITH**<br>**JURY DEMAND** |

Plaintiffs ST. GEORGE HOTEL ASSOCIATES, LLC and HENRY CLARK ASSOCIATES, LLC (hereinafter collectively "Plaintiffs") by their attorneys, Weg and Myers, P.C., as and for their complaint against Defendant, AFFILIATED FM INSURANCE COMPANY (hereinafter "Defendant") respectfully alleges as follows:

## INTRODUCTION

1. Plaintiffs are owners of the St. George Hotel, once the largest hotel in New York City, and located in the heart of the scenic Brooklyn Heights Historical District.

2. The St. George Hotel is currently used, in part, to provide student housing for surrounding colleges.

3. At all relevant times, the St. George Hotel housed over 1,000 student residents through its leases with EHS Clark Residence, LLC and EHS-1, Inc. (collectively referred to herein as "EHS"), both wholly owned subsidiaries of Educational Housing Services, Inc.

4. In addition to its leases with EHS it also maintains several leases with retail tenants.

5. Plaintiffs procured "all risk" property insurance coverage in order to protect their assets against fortuitous losses.

6. Specifically, Plaintiffs procured an "all risk" insurance policy sold by Affiliated FM Insurance Company which was in full force and effect when the Covid-19 pandemic swept through the nation.

7. The Covid-19 pandemic has caused physical loss or damage to high volume commercial residential and retail businesses.

8. In particular, in response to the damage being inflicted, and to protect the public from further exposure to infected areas, New York State and New York City both issued "stay at home" orders which required retail properties to close their doors to the public and schools to cancel all in person classes.

9. As a result of the "stay at home" orders there was a decrease in the demand for student housing at the St. George Hotel which affected the EHS leasing programs as well as the commercial tenants' ability to pay rent and caused Plaintiffs a loss of income.

10. Plaintiffs fully expected that, in light of the all-encompassing all-risk policy of insurance, Defendant would be responsive to their insurance claim.

11. Defendant's failure to provide Plaintiffs with coverage for losses sustained due to the outbreak of Covid-19 has forced Plaintiffs to bring this litigation.

## **JURISDICTION AND PARTIES**

12. This action is filed under and pursuant to 28 U.S.C. §1332, in that Plaintiffs and Defendant are residents of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interests.

13. At all relevant times Plaintiffs, St. George Hotel Associates, LLC and Henry Clark Associates, LLC, were and are domestic corporations duly organized and existing under and by virtue of the laws of New York, having their principal place of business at 100 Henry Street, Brooklyn, New York.

14. At all relevant times Defendant was a foreign corporation organized and existing under and by virtue of the laws of the State of Rhode Island, having its principal place of business at 270 Central Avenue, Johnston, Rhode Island.

15. Pursuant to 28 U.S. Code §1391(b)(2) venue is proper as a substantial part of the events giving rise to this action occurred in the jurisdictional area of the United States District Court, Eastern District of New York.

16. An actual controversy of justiciable nature exists between Plaintiffs and Defendant involving breach of contract.

## THE NOVEL CORONAVIRUS AND ITS EFFECTS

17. It is beyond cavil that the world is currently experiencing a global pandemic from a disease caused by a novel coronavirus (specifically, SARS-COV-2) and commonly referred to as Covid-19.

18. From as early as December 2019, Covid-19 began spreading, first in China and then, because the disease is highly contagious, rapidly around the globe.

19. The first confirmed case of the virus outside china was diagnosed on January 13, 2020 in Bangkok, Thailand with the number of cases exceedingly increasing worldwide.

20. On January 30, 2020, the World Health Organization ("WHO") declared the Covid-19 outbreak constituted a public health emergency of international concern.

21. Not only is SARS-COV-2 transmitted via human-to-human, but the WHO and scientific studies have confirmed that the virus can remain infectious on objects and surfaces.

22. According to a study documented in The New England Journal of Medicine, Covid-19 was detectable in aerosols for up to three (3) hours, up to four (4) hours on copper, up to twenty-four (24) hours on carboard, and up to three (3) days on plastic and stainless steel.[1]

23. Indeed, scientific studies suggest that individuals could get Covid-19 through indirect contact with surfaces or objects used by an infected person, regardless of whether the infected person was symptomatic.

24. All of these materials are used and found throughout the insured premises.

25. By February 25, 2020, the Center for Disease Control ("CDC") warned Americans that the world was on the brink of global pandemic, effectively dismantling any notion that SAR-COV-2 would not affect the population of the United States.

26. From that point forward, Covid-19 and its damaging consequences received wide spread media attention.

27. As a result of this outbreak the Center for Disease Control began recommending that individuals stay at home and those who are not sick engage in preventative measures such as constant hand washing and the avoidance of activities that would bring them in close proximity of people or surfaces where the virus resides.

28. Given the nature of the Plaintiffs' business, the spread of the Covid-19 virus led to significant economic damages.

---

[1] https://www.nejm.org/doi/full/10.1056/nejmc2004973

29. Such damage both existing on surfaces found within the insureds' and surrounding premises as well as in the breathable air circulating within the insureds' and surrounding premises.

30. Human beings spread Covid-19 though the simple act of breathing in air that contains viral droplets. The New York Times recently reported that "[a]n infected person talking for five minutes in poorly ventilated space can also produce as many viral droplets as one infectious cough."[2]

31. Moreover, studies have verified that many individuals remain asymptomatic despite infection by Covid-19.[3]

32. Consequently, while it is possible to identify certain individuals who are suffering from obvious symptoms of the coronavirus absent significant medical testing, it is impossible to distinguish between infected and non-infected members of the general public.

33. Civil authority orders began to be issued by New York State and New York City which required retail properties to close their doors to the public and schools to cancel all in person classes, causing a decrease in the demand for student housing at the St. George Hotel. The basis of these orders were all predicated, in part, on the effect of the presence of Covid-19 within enclosed, highly trafficked locations.

34. For example, the following order was issued by New York State Governor Cuomo:

> WHEREAS, on March 7, 2020, New York State Governor Andrew Cuomo declared a State disaster emergency for the entire State of New York to address the

---

[2] https://www.nytimes.com/interactive/2020/04/14/science/coronavirus-transmission-cough-6-feet-arul.html
[3] https://www.usnews.com/news/health-news/articles/2020-05-28/studies-detail-rates-of-asymptomatic-cases-of-coronavirus (observing that 42% of infected persons in Wuhan, China were asymptomatic).

> threat that COVID-19 poses to the health and welfare of New York residents and visitors; and
>
> . . .
>
> WHEREAS, this order is given because of the propensity of the virus to spread person to person and also because the virus physically is causing property loss and damage; and
>
> NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:
>
> . . .
>
> Any large gathering or event for which attendance is anticipated to be in excess of fifty people, or in excess of any number established as the maximum number permitted by an order of the Governor issued pursuant to his powers under section 29-a of the Executive Law, is cancelled or postponed.
>
> Each employer shall reduce the in-person workforce at any work locations by 50% no later than March 20, 2020 at 8:00 p.m., and shall further reduce its in-person workforce to the extent required by any order of the Governor
>
> issued pursuant to his powers under section 29-a of the Executive Law.

New York City Emergency Executive Order Nos. 100, 102

35.     On or about March 16, 2020 New York State Governor Cuomo issued a further Executive Order No. 202.4, which stated in relevant part:

> Notwithstanding any prior directives, every school in the State of New York is hereby directed to close no later than Wednesday, March 18, 2020, for a period of two weeks, ending April 1, 2020. The state shall reassess at that time whether to extend such closure beyond this date and may continue to suspend the 180 day instructional requirement. The 180 day suspension will be adjusted to the state's allowed closure directive…

## FACTUAL BACKGROUND

36. EHS, Henry Clark Associates, LLC and St. George Hotel Associates, LLC entered into a series of leases wherein Henry Clark Associates, LLC and St. George Associates, LLC agreed to provide dormitory facilities at the St. George Hotel to students who entered into leasing arrangements with EHS. In consideration for providing these dormitory facilities, EHS would pay the Henry Clark Associates, LLC and St. George Hotel Associates a monthly fee.

37. During all relevant times, EHS had contracts to provide dormitory facilities at the St. George Hotel to various colleges within New York City (the "subject colleges").

38. The subject colleges are located within five (5) miles of the St. George Hotel, for their respective students.

39. Several of these colleges are located with one (1) mile of the St. George Hotel.

40. On or about March 16, 2020, in accordance with State of New York Executive Order 202.4, the subject colleges were forced to shut their doors to in person learning.

41. As a result, students from the subject colleges left their dormitories at the St. George Hotel.

42. On or about April 1, 2020, with the dormitory facilities at the St. George Hotel no longer being utilized by these students, EHS was unable to make its monthly payments to Plaintiffs.

43. In addition to the above referenced leases, St. George Hotel Associates, LLC, as landlord, entered into a series of leases with commercial tenants located at the Subject Property.

44. As a result of the the various State and City of New York Executive Orders, Plaintiffs suffered losses resulting from the failure of their commercial tenants to pay rent in a

timely manner stemming directly from their suffering from physical loss or damage, closure of their stores and failure to pay Plaintiffs lease payments.

## PLAINITFFS' INSURANCE POLICY AND CLAIM

45. The commencement of this lawsuit results from a breach of insurance contract arising from the failure of Affiliated FM Insurance Company to provide payment to Plaintiffs for their losses resulting from the global pandemic commonly referred to as coronavirus beginning on or about March, 2020.

46. On or about January 12, 2020, for good and valuable consideration, Plaintiffs procured a policy of insurance from Affiliated FM Insurance Company (the "Subject Policy") bearing policy number SS957.

47. The Subject Policy provides coverage for, *inter alia*, physical loss or damages, as well as losses of income due to business interruption.

48. The Subject Policy bears effective dates from January 12, 2020 to January 12, 2021.

49. The Subject Policy was in full force and effect as of March, 2020 and remains in full force and effect through the filing date of this Complaint.

50. The Subject Policy provides coverage for all risks of physical loss or damage, including but not limited to coverage for the loss of business income, in the amount of $139,858,999.00 for each loss, together with a $10,000.00 deductible for each loss.

51. The Subject Policy provides in relevant part:

> A. **LOSS INSURED**
>
> > This Policy insures Business Interruption loss, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured:

1. To the property as described elsewhere in this Policy and not otherwise excluded by this Policy

. . .

### B. BUSINESS INTERRUPTION COVERAGE

2. **Gross Profits**

   The recoverable Gross Profits loss is the actual loss sustained by the Insured of the:

   a) **Reduction in Sales;** and the

   b) **Increased Cost of Doing Business**,

   Resulting from the necessary interruption of business during the Period of Liability.

   . . .

3. **Rental Income**

   The recoverable Rental Income loss is the actual loss sustained by the Insured of the following during the Period of Liability:

   a) The fair rental value of any portion of the property occupied by the Insured;

   b) Income reasonably expected from the rentals of unoccupied or unrented portions of such property;

   c) The rental income from the rented portions of such property, according to bona fide leases, contracts or agreements, in force at the time of the loss.

52. The Subject Policy also includes Business Interruption Coverage Extensions in relevant part:

   1. **Attraction Property**

      This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability directly resulting from physical loss or damage of the type

insured to property of the type insured that attracts business to a **described location** and is within one (1) statute mile of the **described location**.

2. **Civil or Military Authority**

   This Policy covers the Business Interruption Coverage incurred by the Insured during the period of Liability if an order of civil or military authority prohibits access to a **location** provided such order is in direct result of physical damage of the type insured at a **location** or within five (5) statute miles of it.

3. **Communicable Disease – Business Interruption**

   If a **described location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **described location** is limited, restricted or prohibited by:

   a) An order of an authorized governmental agency regulating such presence of **communicable disease**;

   . . .

4. **Extended Period of Liability**

   The Gross Earnings and Rental Income coverage is extended to cover the reduction in sales resulting from:

   a) The interruption of business as covered by Gross Earnings or Rental Income;

   b) For such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss happened; and

   . . .

8. **Ingress/Egress**

   This Policy covers the Business Interruption Coverage loss incurred by the Insured due to the necessary interruption of the Insured's business when ingress to or egress from a described location(s) is physically

        prevented, either partially or totally, as a direct result of
        physical loss or damage of the type insured to property of
        the type insured whether or not at a described location.

  42.  No exclusions in the Subject Policy applies to preclude coverage for the actual presence of Covid-19 at or away from Plaintiffs' property, the physical loss and damage to the property/or the business interruption losses that have and will continue to result from the physical loss and damage to property.

  43.  As a result of the Covid-19 pandemic and the civil authority orders that flowed therefrom, Plaintiffs experienced a loss in revenue, amongst other losses.

  44.  Pursuant to Insurance Law § 216.6, Defendant had fifteen (15) business days to accept or reject Plaintiffs' claim.

  45.  On or about July 29, 2020 Defendant sent Plaintiffs an e-mail acknowledging receipt of Plaintiffs' Sworn Statement in Proof of Loss and stating that Defendant would begin the process of reviewing the Proof of Loss and supporting documentation.

  46.  To date, the designated adjuster for Defendant has not substantively responded to Plaintiffs' claim.

  47.  As documented by all of the information Plaintiffs have provided to Defendant, Plaintiffs have suffered a loss in the amount of at least $9,643,396.00.

  48.  Defendant's lack of timely response to Plaintiffs' Sworn Statement in Proof of Loss reflects a pattern of conduct and behavior in which Defendant has inexcusably delayed payment on claims and improperly denied coverage relating to claims for losses caused by Covid-19 and the on ongoing pandemic.

## **AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT**
(Breach of Contract)

49. Plaintiffs repeat and reallege paragraphs "1" through "48", with the same force and effect as if set forth at length herein.

50. The Subject Policy constituted a binding contract between Plaintiffs and Affiliated FM Insurance Company.

51. Plaintiffs complied with all of their obligations under the Subject Policy, including through timely notification of a loss and the filing of a Sworn Statement in Proof of Loss.

52. To date, Affiliated FM Insurance Company has failed to compensate Plaintiffs for any of the losses documented in the Sworn Statement in Proof of Loss submitted to Affiliate FM Insurance Company on or about July 22, 2020.

53. As a result of Defendant's breach of the Subject Policy, Plaintiffs have suffered total recoverable damage in an amount likely to exceed $9,643,396.00, together with such additional and subsequent damages as may be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

(a) On the First Cause of Action, a money judgment against Defendant in the amount of likely to exceed $9,643,396.00, together with such additional and subsequent damages as may be proven at trial; and

(b) Reasonable fees and costs and such other and further relief as to which this Court deems just and proper.

Dated: New York, New York
October 22, 2020

Yours, etc.,

**WEG AND MYERS, P.C.**
*Attorneys for Plaintiffs*


By:    /s/ /Joshua L. Mallin/
       Dennis D'Antonio, Esq. (DD0973)
       Joshua L. Mallin, Esq. (JM0474)
Federal Plaza
52 Duane Street, 2nd Floor
New York, New York 10007
(212) 227-4210