UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
St. George Hotel Associates, LLC and
Henry Clark Associates, LLC,

                       Plaintiffs,                       **MEMORANDUM & ORDER**
                                                                                   20-CV-05097 (DG) (RLM)
           -against-

Affiliated FM Insurance Company,

                       Defendant.
-------------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

       On October 22, 2020, Plaintiffs St. George Hotel Associates, LLC and Henry Clark Associates, LLC (collectively, "Plaintiffs") commenced this action against Defendant Affiliated FM Insurance Company ("Defendant"), alleging breach of contract. *See generally* Complaint, ECF No. 1. Plaintiffs thereafter amended their complaint twice. *See* First Amended Complaint, ECF No. 9; Second Amended Complaint ("SAC"), ECF No. 10. The operative SAC contains one cause of action, breach of contract. *See* SAC ¶¶ 62-66. Defendant filed an Answer to the SAC, ECF No. 11, and subsequently filed an Amended Answer to the SAC, ECF No. 17.

       Pending before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)"), which Plaintiffs oppose. *See* Defendant's Motion for Judgment on the Pleadings, ECF No. 24; Defendant's Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Def.'s Br."), ECF No. 24-1; Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pls.' Br."), ECF No. 25; Defendant's Reply Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Def.'s Reply"), ECF No. 26; s*ee also* Defendant's Notice of Supplemental Authority, ECF No. 27; Defendant's Second Notice of Supplemental

Authority, ECF No. 29; Defendant's Third Notice of Supplemental Authority, ECF No. 31; Defendant's Fourth Notice of Supplemental Authority, ECF No. 33; Defendant's Fifth Notice of Supplemental Authority, ECF No. 35; Defendant's Sixth Notice of Supplemental Authority, ECF No. 38; Defendant's Seventh Notice of Supplemental Authority, ECF No. 41; Plaintiffs' Response to Defendant's Notice of Supplemental Authority, ECF No. 28; Plaintiffs' Response to Defendant's Second Notice of Supplemental Authority, ECF No. 30; Plaintiffs' Response to Defendant's Third Notice of Supplemental Authority, ECF No. 32; Plaintiffs' First Notice of Supplemental Authority, ECF No. 36.

Through its Motion for Judgment on the Pleadings (the "Motion"), Defendant seeks dismissal of Plaintiffs' Second Amended Complaint in its entirety, with prejudice. *See* Def.'s Br. at 1-3.

For the reasons set forth below, Defendant's Motion is granted and Plaintiffs' Second Amended Complaint is dismissed.

## BACKGROUND

**I.    Factual Background**[1]

**A.    Plaintiffs' Business**

Plaintiffs are owners of the St. George Hotel (the "Hotel"), located in the Brooklyn Heights Historical District of New York City. SAC ¶ 1. The Hotel is used, in part, to provide

---

[1] The following facts, which are viewed in the light most favorable to Plaintiffs, are drawn from the SAC and from the insurance policy at issue (the "Policy"), ECF No. 24-3, which Defendant filed with the Motion. The Court considers the Policy in connection with deciding the Motion because the Policy, which is mentioned throughout the SAC, *see, e.g.*, SAC ¶¶ 6, 10, 48-55, 63-64, 66, is incorporated by reference in – and integral to – the SAC, and because there is no dispute regarding the Policy's authenticity, accuracy, or relevance. In citing to the Policy, the Court refers to the pagination generated by the Court's electronic case filing system ("ECF"), rather than the Policy's internal pagination.

student housing for surrounding colleges. *Id.* ¶ 2. At relevant times, the Hotel housed over 1,000 student residents through its leases with EHS Clark Residence, LLC and EHS-1, Inc. (collectively, "EHS"). *Id.* ¶ 3; *see also id.* ¶ 38. EHS had contracts to provide dormitory facilities at the Hotel to various colleges within New York City that were located within five miles of the Hotel (the "subject colleges"). *Id.* ¶¶ 39-40. Several of the subject colleges were located within one mile of the Hotel. *Id.* ¶ 41.

In addition to its leases with EHS, the Hotel maintained several leases with commercial and/or retail tenants. *See id.* ¶¶ 4, 45.

### B. The Covid-19 Pandemic and Civil Authority Orders

As a result of the Covid-19 pandemic, New York State and New York City issued civil authority orders that required retail properties to close their doors to the public and schools to cancel in-person classes. *See id.* ¶¶ 8, 35; *see also id.* ¶¶ 36-37. As a result of the orders, there was a decrease in the demand for student housing at the Hotel. *See id.* ¶¶ 9, 35; *see also id.* ¶¶ 42-43. More specifically, on or about March 16, 2020, in accordance with State of New York Executive Order 202.4, certain colleges with which EHS had contracts to provide dormitory facilities at the Hotel were forced to shut their doors to in-person learning and, as a result, students left their dormitories at the Hotel. *Id.* ¶¶ 42-43. On or about April 1, 2020, with the dormitory facilities at the Hotel no longer being utilized by these students, EHS was unable to make its monthly payments to Plaintiffs. *Id.* ¶ 44. The ability of the Hotel's commercial tenants to pay rent in a timely manner was also affected by the various State and City orders, causing

Plaintiffs a loss of income. *Id.* ¶¶ 9, 46. Given the nature of Plaintiffs' business, the spread of Covid-19 led to significant economic damages. *Id.* ¶ 30.

        **C.**      **The Relevant Policy Provisions**

Plaintiffs procured "all risk" property insurance coverage in order to protect their assets against fortuitous losses. *Id.* ¶ 5. Specifically, Plaintiffs procured an "all risk" insurance policy sold by Defendant. *Id.* ¶ 6. Plaintiffs procured the Policy on or about January 12, 2020. *Id.* ¶ 48. The Policy bears effective dates from January 12, 2020 to January 12, 2021. *Id.* ¶ 50. The Policy was in full force and effect when the Covid-19 pandemic swept through the nation. *Id.* ¶ 6.

The Policy itself provides that it "covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded." Policy at 4 (emphasis in original). The Policy further specifies certain exclusions that "apply unless otherwise stated." *See id.* at 16-19.

        **1.**      **Business Interruption Coverage and Relevant Extensions**

The Policy provides coverage for "Business Interruption loss, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured . . . [t]o property as described elsewhere in this Policy and not otherwise excluded by this Policy." Policy at 33; *see also* SAC ¶ 53. The Policy also includes certain "Business Interruption Coverage Extensions." *See* Policy at 38-45.

Five such extensions are: (1) Attraction Property; (2) Civil or Military Authority; (3) Ingress/Egress; (4) Communicable Disease – Business Interruption ("Communicable Disease"); and (5) Extended Period of Liability. *See* SAC ¶ 54; *see also* Policy at 38-41.

Under the Attraction Property extension, the Policy covers the "Business Interruption Coverage loss incurred by the Insured during the Period of Liability directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to a described location and is within one (1) statute mile of the described location."  Policy at 38;[2] *see also* SAC ¶ 54.

Under the Civil or Military Authority extension, the Policy covers the "Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a location provided such order is in direct result of physical damage of the type insured at a location or within five (5) statute miles of it."  Policy at 38; *see also* SAC ¶ 54.

Under the Ingress/Egress extension, the Policy covers the "Business Interruption Coverage loss incurred by the Insured due to the necessary interruption of the Insured's business when ingress to or egress from a described location(s) is physically prevented, either partially or totally, as a direct result of physical loss or damage of the type insured to property of the type insured whether or not at a described location."  Policy at 41; *see also* SAC ¶ 54.

Under the Extended Period of Liability extension, the Policy extends the Policy's Gross Earnings and Rental Income coverage to cover the reduction in sales resulting from certain circumstances listed in the Policy.  *See* Policy at 40-41; *see also* SAC ¶ 54.

Under the Communicable Disease extension, the Policy provides, in relevant part, coverage "[i]f a described location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such described location is limited,

---

[2]  Although certain phrases contained in the Policy (and the SAC, when quoting the Policy) are set forth therein in bold, the Court herein, for ease of readability, does not use bold when quoting those phrases.

5

restricted or prohibited by: a) An order of an authorized governmental agency regulating such presence of communicable disease." Policy at 39; *see also* SAC ¶ 54.

### 2. Relevant Exclusions

In addition to the foregoing extensions, the Policy features two exclusions relevant to the instant Motion: (1) the Contamination Exclusion; and (2) the Loss of Use Exclusion.

The Contamination Exclusion, in relevant part, excludes "Contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured." Policy at 19. The Policy defines "contamination" as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." *Id.* at 56.

The Loss of Use Exclusion excludes "[l]oss of market or loss of use." *Id.* at 18.

### D. Plaintiffs' Claim Under the Policy

In connection with their claim under the Policy, on or about July 22, 2020, Plaintiffs submitted a "Sworn Statement in Proof of Loss" to Defendant. *See* SAC ¶¶ 58, 65. On or about July 29, 2020, Defendant sent an email to Plaintiffs acknowledging receipt of Plaintiffs' Sworn Statement in Proof of Loss and stating that Defendant would begin the process of reviewing the Proof of Loss and supporting documentation. *Id.* ¶ 58. As of the date of the filing of the SAC, Defendant had not substantively responded to Plaintiffs' claim. *Id.* ¶ 59.

...

**II.     Procedural Background**

Plaintiffs filed their Complaint on October 22, 2020.  *See* ECF No. 1.  Plaintiffs filed their First Amended Complaint on November 20, 2020, *see* ECF No. 9, and filed the operative Second Amended Complaint on November 30, 2020, *see* ECF No. 10.  On December 11, 2020, Defendant filed an Answer to the SAC, *see* ECF No. 11, and on March 1, 2021, Defendant filed an Amended Answer to the SAC, *see* ECF No. 17.

The fully-briefed Motion for Judgment on the Pleadings was filed on May 7, 2021.  *See* ECF Nos. 24-26.  Thereafter, the parties filed various supplemental authority submissions.  *See* ECF Nos. 27, 28, 29, 30, 31, 32, 33, 35, 36, 38, 41.

**STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "In deciding a 12(c) motion, the Court may consider 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835, 838 (S.D.N.Y. 2017) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).  "The Court may also consider documents incorporated into the complaint by reference or integral to the complaint, provided there is no dispute regarding their authenticity, accuracy, or relevance." *Id*. (citing *L-7 Designs, Inc.*, 647 F.3d at 422).  "A Rule 12(c) motion should be granted 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Loc. 537*, 47 F.3d 14, 16 (2d Cir. 1995)).

"The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6)." *Rojas v. Berryhill*, 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019) (citing *L-7 Designs, Inc.*, 647 F.3d at 429; and *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010)). To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "accept all 'well-pleaded factual allegations' in the complaint as true . . . [and] 'construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff.'" *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Iqbal*, 556 U.S. at 679; then quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Plaintiffs assert a breach of contract claim based on Defendant's alleged failure to compensate Plaintiffs under the Policy for Plaintiffs' Covid-19-related losses. *See* SAC ¶¶ 62-66. Because Plaintiffs have not plausibly alleged entitlement to coverage under the Policy, they have failed to state a plausible claim for breach of contract and, accordingly, the SAC must be dismissed.

## I. Applicable Law

"Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996)).[3] "It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).[4] "This is true even for 'all-risk' policies – labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Mohawk Gaming Enters., LLC v. Affiliated FM Ins. Co.*, 534 F. Supp. 3d 216, 222 (N.D.N.Y. 2021) (quoting *Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*, 448 F. Supp. 3d 287, 293 (W.D.N.Y. 2020)).

"The initial interpretation of a contract is a matter of law for the court to decide." *Morgan Stanley Grp. Inc.*, 225 F.3d at 275 (alteration accepted) (quotation marks omitted). "Under New York law, 'an insurance contract is interpreted to give effect to the intent of the

---

[3] As the parties appear to agree, New York substantive law applies in the instant case. *See* Pls.' Br. at 17 n.6 ("There is no dispute between the parties that New York law applies to this contract dispute involving a New York based insured with the Subject Property being located in the State of New York."); Def.'s Br. at 11-15 & Def.'s Reply at 2-3 (discussing New York substantive law); *see also Bonchon LLC v. LKRG Provisions & Holdings, LLC*, No. 20-CV-03938, 2021 WL 5042858 at *3 n.7 (S.D.N.Y. Oct. 29, 2021) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (quoting *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016))).

[4] "An insurer bears the burden of proof when it claims that an exclusion in the policy applies to an otherwise covered loss." *Morgan Stanley Grp. Inc.*, 225 F.3d at 276 n.1. Although, here, Defendant does argue that certain of the Policy's exclusions bar coverage with respect to Plaintiffs' insurance claim, *see* Def.'s Br. at 15-18, the Court need not – and does not – consider those arguments, as the Court concludes that the Policy does not cover Plaintiffs' alleged losses, regardless of the Policy's exclusions.

parties as expressed in the clear language of the contract.'" *Id.* (quoting *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)). "Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured." *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 122 (2011). "If the provisions are clear and unambiguous, courts are to enforce them as written." *Vill. of Sylvan Beach, N.Y.*, 55 F.3d at 115. "However, if the policy language is ambiguous . . . the ambiguity must be interpreted in favor of the insured." *Id.*; *accord Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708 (2012) ("Ambiguities in an insurance policy are to be construed against the insurer." (alteration accepted) (quotation marks omitted)). "An ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Grp. Inc.*, 225 F.3d at 275 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)).

## II.     Plaintiffs Have Not Plausibly Alleged Coverage Under the Policy

Plaintiffs rest their claim to coverage on the theory that their alleged losses fall subject to the Policy's Business Interruption Coverage. *See* SAC ¶¶ 53-54. Plaintiffs do not appear to claim coverage under the Policy's general Business Interruption Coverage but, rather, appear to claim coverage under certain of the Policy's Business Interruption Coverage extensions. *See id.* ¶ 54; *see generally* Pls.' Br.[5] Specifically, Plaintiffs argue that they have adequately pled

---

[5] To the extent that Plaintiffs intended to allege coverage under the Policy's general Business Interruption Coverage – which is not apparent from either the SAC or Plaintiffs' briefing – such an allegation would not salvage their breach of contract claim because coverage under the Policy's general Business Interruption Coverage requires "physical loss or damage," *see* Policy at 33, which Plaintiffs have not plausibly alleged, as discussed more fully below.

10

entitlement to coverage under the Attraction Property, Civil or Military Authority, Ingress/Egress, and Extended Period of Liability extensions, *see* Pls.' Br. at 19-20 n.7, as well as under the Communicable Disease extension, *see id.* at 9-14.[6]

Because none of these extensions offers a basis for coverage of Plaintiffs' alleged losses, Plaintiffs' breach of contract claim must be dismissed.

### A. Attraction Property, Civil or Military Authority, and Ingress/Egress Extensions

By their express terms, the Attraction Property, Civil or Military Authority, and Ingress/Egress extensions cover only those losses directly caused by "physical loss or damage" or "physical damage."[7]

The SAC does not allege facts that demonstrate physical damage as that term is ordinarily understood – *i.e.*, actual physical damage or, put differently, "a negative alteration in the tangible condition of property." *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 176 (S.D.N.Y. 2020), *appeal withdrawn*, No. 21-57, 2021 WL 1408305 (2d Cir. Mar. 23, 2021).[8] Plaintiffs, however, advance two arguments in support of their claim that their alleged

---

[6] Although Plaintiffs argue that they have adequately pled coverage under the Extended Period of Liability extension, *see* Pls.' Br. at 19-20 n.7, the Extended Period of Liability extension does not provide an independent basis for coverage. Rather, as Plaintiffs appear to concede, *see id.* at 4, the function of the Extended Period of Liability extension is to expand the time period used to calculate the insured's recoverable loss, when the insured has suffered a loss covered under certain of the Policy's other provisions, *see* Policy at 40-41. Because the Court concludes that Plaintiffs have not adequately pled coverage under any of the Policy provisions on which they rely, the Extended Period of Liability extension does not apply here.

[7] Specifically, the Attraction Property and Ingress/Egress extensions each requires "physical loss or damage of the type insured," *see* Policy at 38, 41; *see also* SAC ¶ 54, and the Civil or Military Authority extension requires "physical damage of the type insured," *see* Policy at 38; *see also* SAC ¶ 54.

[8] Plaintiffs have included in the SAC various conclusory assertions relating to the issue of physical loss or damage. *See, e.g.*, SAC ¶ 7 ("The Covid-19 pandemic has caused physical loss or damage to high volume commercial residential and retail businesses."); *id.* ¶ 46 ("Plaintiffs suffered losses resulting from the failure of their commercial tenants to pay rent in

Covid-19-related losses nevertheless qualify for coverage.

First, Plaintiffs argue that term "physical loss or damage" is ambiguous because the adjective "physical" does not necessarily modify the noun "damage" – and that, because ambiguous terms must be read in favor of the insured, the word "damage" must be read in isolation to require "merely the fact of harm," not "a physical cause for such harm." *See* Pls.' Br. at 15-16. Second, Plaintiffs argue in the alternative that, even if actual physical damage is required, Covid-19's presence satisfies that requirement because Covid-19 "was present at [the insured] premises and resulted in both atmospheric surface pollution rendering the space unusable and physical contact with the premises." *Id.* at 19; *see also* SAC ¶¶ 24-26, 31. Neither of Plaintiffs' arguments is persuasive.

As used in the Policy, the term "physical loss or damage" is clear and unambiguous. It requires actual physical damage to the insured's property. Mere loss of use or functionality will not do. This conclusion is supported by the overwhelming weight of precedent. *See, e.g., Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (explaining that the phrase "'direct physical loss or damage' . . . unambiguously . . . requires some form of actual, physical damage to the insured premises"); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6-8 (1st Dep't 2002); *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 915 (N.Y. Sup. Ct., Orange Cnty., 2021)

---

a timely manner stemming directly from their suffering from physical loss or damage . . . ."). Plaintiffs have not, however, included factual allegations sufficient to support these conclusory assertions. This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); s*ee also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (stating that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss" (alterations accepted) (quotation marks omitted)); *see also, e.g., Peppiatt v. Aetna Life Ins. Co.*, No. 17-CV-02444, 2017 WL 6034641, at *5 (E.D.N.Y. Dec. 4, 2017).

("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' require a showing of actual, demonstrable physical harm of some form to the insured premises . . . . New York courts, state and federal, applying New York law have uniformly held that this policy language is not ambiguous, and that it unambiguously excludes coverage for the mere loss of use or functionality of the covered premises in the absence of actual, demonstrable physical harm thereto."); *see also, e.g.*, *Michael Cetta, Inc.*, 506 F. Supp. 3d at 176 (concluding that the phrase "direct physical loss of or damage to" was unambiguous and "connotes a negative alteration in the tangible condition of property"); *cf. Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, 492 F. Supp. 3d 1051, 1055 (C.D. Cal. 2020) ("An insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property."). Accordingly, to plausibly allege coverage under the Policy here, Plaintiffs must allege actual physical damage to insured property. Plaintiffs' argument to the contrary is unavailing.

Plaintiffs' alternative argument that Covid-19's presence does, indeed, constitute actual physical damage is equally unavailing. This Court agrees with the great weight of authority concluding that the presence of Covid-19 does not actually "damage" insured property. *See Spirit Realty Cap., Inc. v. Westport Ins. Corp.*, No. 21-CV-02261, 2021 WL 4926016, at *3 (S.D.N.Y. Oct. 21, 2021) ("[T]he overwhelming weight of precedent, both from lower New York courts and district courts in this Circuit, holds that COVID-19 does not qualify as 'physical loss or damage.'"); *see also id.* (collecting cases); *Michael Cetta, Inc.*, 506 F. Supp. 3d at 179-80 (collecting cases); *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, No.

20-CV-02777, 2021 WL 1091711, at *4 (E.D.N.Y. Mar. 22, 2021); *DeMoura v. Cont'l Cas. Co.*, 523 F. Supp. 3d 314, 322 (E.D.N.Y. 2021).[9]

Accordingly, because the Court concludes that coverage under the Policy's Attraction Property, Civil or Military Authority, or Ingress/Egress extensions requires actual physical damage – and the SAC fails to plausibly allege actual physical damage – the SAC fails to state a claim for breach of contract insofar as that claim relies on the theory that Plaintiffs' alleged losses were subject to coverage under those extensions.[10]

---

[9] Defendant argues that Plaintiffs have not adequately alleged the presence of Covid-19 at an insured location. *See* Def.'s Reply at 4-6. The Court need not – and does not – reach this issue in light of the Court's conclusion that the presence of Covid-19 does not constitute actual physical damage.

In opposing the Motion, Plaintiffs seek to rely on the opinions of two proposed experts: Dr. Alexksandr Aravkin – about the prevalence of Covid-19; and Dr. Michael A. Sulzinski – about Covid-19's ability to cause physical loss or damage. *See* Sulzinski Affidavit, ECF No. 25-3; Sulzinski Report, ECF No. 25-5; Aravkin Affidavit, ECF No. 25-6; Aravkin Report, ECF No. 25-8; *see also* Certification of Joshua L. Mallin, ECF No. 25-1 ¶¶ 4, 7 (declaring that the Aravkin and Sulzinski opinions "served as a basis for Plaintiffs' pleadings"). Defendant argues that these opinions may not properly be considered by the Court in connection with resolving the instant Motion. *See* Def.'s Reply at 4-5. The Court agrees that the Aravkin and Sulzinski opinions (whether contained in their affidavits or in their reports) may not be considered in connection with the instant Motion, because the reports and affidavits are not incorporated into the SAC by reference or integral to the SAC, and – additionally – because there is a dispute as to their accuracy and/or relevance. *See Thyssenkrupp*, 236 F. Supp. 3d at 838. The Court notes, though, that, even if these experts' opinions were appropriate for consideration at this stage, they would not alter the Court's analysis herein.

[10] Defendant raises several additional and persuasive arguments as to why Plaintiffs' alleged losses are not covered by the Civil or Military Authority or Ingress/Egress extensions. *See* Def.'s Br. at 18-23 (arguing that the Civil or Military Authority extension does not apply because access to the Hotel was not "prohibited" by a governmental order, nor does the SAC allege as much, and that the orders in question were not issued as a direct result of physical damage to property at the Hotel or elsewhere, and arguing that the Ingress/Egress extension does not apply because Plaintiffs do not, and cannot, allege facts sufficient to show that ingress to or egress from the Hotel was "physically prevented"). Further, Defendant persuasively argues that, even if the Attraction Property, Civil or Military Authority, or Ingress/Egress extension(s) offered a basis for coverage, Plaintiffs' claim is independently barred by the Policy's Contamination Exclusion and Loss of Use Exclusion. *See id.* at 15-18 (arguing that Plaintiffs' alleged losses were not "of the type insured" under the Policy because the policy excludes contamination and "contaminant" is defined to include a "virus," and

14

### B.      Communicable Disease Extension

Plaintiffs' remaining argument is that the Communicable Disease extension provides coverage for their alleged Covid-19-related losses. *See* Pls.' Br. at 9-13. This argument fails too.

For the Communicable Disease extension to apply here, a "described location owned, leased or rented by the Insured" must have had "the actual not suspected presence of communicable disease" and access to such described location must have been "limited, restricted or prohibited by . . . [a]n order of an authorized governmental agency regulating such presence of communicable disease . . . ." *See* Policy at 39; *see also* SAC ¶ 54.

Plaintiffs concede that the Communicable Disease extension is limited to a "described location" as defined in the Policy and that the Policy expressly defines the "described locations" as: "51-55, 57-59 & 61-67 Clark, 98-106 & 92-96 Henry & 74-82 Pineapple St's, Brooklyn, NY, 11201, Index No. 000939.40." *See* Pls.' Br. at 12. Plaintiffs do not allege in the SAC or argue in their briefing that access to any of these described locations was "limited, restricted or prohibited" by any governmental order. *See generally* SAC; *see also* Pls.' Br. at 12-13.

Instead, Plaintiffs argue that the Communicable Disease extension must be read in light of a separate extension, the "Attraction Property" extension, *see* Pls.' Br. at 12-13, which extends coverage to losses "directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to a described location and is within one (1) statute mile of the described location," *see* Policy at 38. Plaintiffs assert that various "colleges

---

arguing that loss of use falls outside the scope of coverage). Because the Court concludes that the Attraction Property, Civil or Military Authority, and Ingress/Egress extensions do not provide coverage with respect to Plaintiffs' alleged losses for the reasons set forth above, the Court need not reach these additional arguments advanced by Defendant.

15

[that] housed students [at the Hotel] were shut down because of the virus' presence within the various colleges' buildings," and that these colleges "are the types of 'attractive properties' that Plaintiffs sought coverage for when they decided to procure coverage from Defendant." *See* Pls.' Br. at 2. Plaintiffs appear to argue, based on these assertions, that the closure of these colleges provides a basis for coverage under the Communicable Disease extension. *See id.* at 12-13.

      This argument is precluded by the clear and unambiguous language of the Policy. The Communicable Disease extension does not reference the Attraction Property extension at all, much less include language suggesting that it in any way incorporates the Attraction Property extension. Moreover, the clear and unambiguous language of the Communicable Disease extension itself indicates that the Communicable Disease extension applies only to a "described location" that is "owned, leased or rented by the Insured." *See* Policy at 39; SAC ¶ 54. Plaintiffs do not allege that the colleges they identify as "attraction properties," *see* Pls.' Br. at 2, meet these requirements. And, as noted above, Plaintiffs do not allege in the SAC or argue in their briefing that the described locations expressly defined in the Policy were "limited, restricted or prohibited" by any governmental order. Accordingly, the Second Amended Complaint fails to state a claim for breach of contract insofar as that claim relies on the theory that Plaintiffs' alleged losses were subject to coverage under the Communicable Disease extension.[11]

---

[11] The Court need not – and does not – reach Defendant's additional arguments as to why the Communicable Disease extension does not apply. *See* Def's. Br. at 23-25.

\* \* \*

In sum, Plaintiffs have failed to adequately allege coverage under any of the Policy provisions on which they base their breach of contract claim. Accordingly, the Second Amended Complaint fails to state a claim for breach of contract.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings, ECF No. 24, is GRANTED and the Second Amended Complaint, ECF No. 10, is DISMISSED.

The Clerk of Court is respectfully directed to enter judgment accordingly and to close the case.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: December 20, 2021
        Brooklyn, New York